IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-02137-WYD

ANDREW G. HARRIS,

       Petitioner,

v.

ARI ZAVARAS, Director,
MARK A. BROADDUS, Warden, Denver Reception and Diagnostic Center, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

       Respondents.

---

## ORDER OF DISMISSAL

---

Applicant Andrew G. Harris is in the custody of the Colorado Department of

Corrections.  Mr. Harris, acting *pro se*, initiated this action, on October 1, 2007, by filing

an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging

the validity of his January 29, 1993, conviction in the Denver District Court of Colorado

in Case No. 91CR1013.  After three directives by Magistrate Judge Boyd N. Boland for

Mr. Harris to file his claims on a Court-approved form and show cause why the action

should not be dismissed as time-barred pursuant to 28 U.S.C. § 2244(d), Mr. Harris,

through counsel, submitted an Amended Petition on March 6, 2008.

On March 24, 2008, I directed Respondents to file an Answer conforming to the

requirements of Rule 5 of the Rules Governing Section 2254 Cases.  On May 21, 2008,

Respondents filed an Answer, and Mr. Harris filed a Reply on June 11, 2008.  After

reviewing the entire file, I find that an evidentiary hearing is not necessary.  For the reasons stated below, the Application will be denied.

## I.  BACKGROUND

In the Amended Petition, Mr. Harris asserts that subsequent to a trial by jury he was found guilty of two counts of aggravated robbery and five habitual offender counts. (Am. Pet. (Doc. # 10) at 3.)[1]  Mr. Harris further asserts that on April 22, 1993, he was sentenced to two concurrent life terms with an allowance for parole after forty years. (Am. Pet. at 3.)  Mr. Harris also asserts that he filed a direct appeal, in which the Colorado Supreme Court denied his petition for certiorari review on April 15, 1996. (Am. Pet. at 3-4.)  Mr. Harris further asserts that he filed a Colo. R. Crim. P. 35(c) postconviction motion on July 15, 1997, in which the Colorado Supreme Court denied the petition for certiorari review on June 11, 2007.  (Am. Pet. at 5-7.)

In the Amended Petition, Mr. Harris sets forth the following claims:

> (1)  Ineffective Assistance of Counsel for Not Endorsing and Presenting an Alibi defense;
>
> (2)  Ineffective Assistance of Counsel/Impermissibly Suggestive Photo Lineup
>
> (3)  Denial of Substitute Counsel
>
> (4)  Prosecutorial Misconduct/Denial of Due Process
>
> (5) Denial of Right to Notice of Habitual Offender Charges

---

[1]  Page numbers referred to in citations to documents filed in this case are the page numbers identified by the Court's Electronic Court Filing system.

## II.  STANDARD OF REVIEW

A.  28 U.S.C. § 2244(d) Time-Bar

28 U.S.C. § 2244(d) provides as follows:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> > (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondents argue that Mr. Harris's Application is time-barred.  They contend that Mr. Harris's conviction became final on July 14, 1996, ninety days after the

Colorado Supreme Court denied certiorari review in Mr. Harris's direct appeal.   (Answer (Doc. # 20) at 8.)  Respondents further contend that Mr. Harris, pursuant to § 2244(d), had until July 14, 1997, to file a federal habeas petition, but that he filed his postconviction motion on July 17, 1997, three days after the statute of limitations expired under § 2244(d).  (Answer at 9.)  Respondents argue that the state district court determined the filing date of the postconviction motion to be July 17, 1997, and that at the time Mr. Harris filed his postconviction motion no mailbox rule existed under Colo. R. Crim P. 35(c), which would allow the motion to be deemed filed on July 15, 1997, the date Mr. Harris dated and signed the Rule 35(c) postconviction motion.  (Answer at 9.)

Mr. Harris argues that a mailbox rule did exist in Colorado in 1997 under Colo. R. Civ. P. 5(b), and Colo. R. Crim. P. 57(b) provides that the state court shall look to the rules of civil procedure if no applicable rule exists under the rules of criminal procedure. (Reply (Doc. # 21) at 2.)

Mr. Harris does not allege either in his Application or his Reply that there are any constitutional rights newly recognized by the Supreme Court that apply to his claims. He also does not assert that he did not know or could not have discovered the factual predicate for his claims at the time of his conviction and direct appeal or that there were any impediments to filing a 28 U.S.C. § 2254 application that were created by state action.  As a result, I find that the time during which a postconviction motion or collateral proceeding was not pending in state court is more than one year.  Even if I find that Mr. Harris submitted his Rule 35(c) postconviction motion on July 15, 1997, the date he signed and mailed the motion, the time from June 12 until September 17, 2007, a total

4

of 98 days, is not tolled for the purposes of § 2244(d). The action, therefore, is time-barred in the absence of some other reason to toll the one-year limitation period.

The one-year limitation period in § 2244(d) is not jurisdictional and may be tolled for equitable reasons in appropriate extraordinary situations when circumstances beyond a prisoner's control make it impossible to file the habeas corpus application on time. *See Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998). In addition, equitable tolling may be appropriate if the inmate is actually innocent or if the inmate actively pursues judicial remedies but files a defective pleading within the statutory period. *See Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000). Simple excusable neglect, however, is not sufficient to support equitable tolling. *See id.* Furthermore, equitable tolling is appropriate only if the inmate pursues his claims diligently. *See Miller*, 141 F.3d at 978. The inmate must allege with specificity the steps he took to pursue his federal claims. *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008). Finally, Mr. Harris bears the burden of demonstrating that equitable tolling is appropriate in this action. *See Miller*, 141 F.3d at 978.

Mr. Harris argues that even if he filed the postconviction motion one or two days after the one-year time limitation expired he still is entitled to equitable tolling because (1) he is actually innocent; and (2) he suffered the onset of kidney failure in June 2007, which delayed the filing of the instant habeas action. (Am. Pet. at 8-10.) In his Reply, Mr. Harris also argues that he reasonably could have interpreted the time limitation under § 2244(d) to be July 24, 1997, one year and ninety days after the effective date of the enactment of § 2244(d). (Reply at 3.)

Respondents argue that to qualify for the actual innocence exception, in keeping with *Schulp v. Delo*, 513 U.S. 298, 324 (1995), Mr. Harris must support his allegations with new reliable evidence including either exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. (Answer at 10.)  Respondents further argue that the *Schulp* standard is demanding and permits review only in an extraordinary situation.  (Answer at 10.)  Respondents contend Mr. Harris's actual innocence claim is based on claims of ineffective assistance of counsel, prosecutorial misconduct, and dubious eyewitness testimony, and are not proper grounds for waiving the time limitation.  (Answer at 11.)  Respondents also argue that Mr. Harris's illness did not occur until ten years after his federal habeas petition was due, and the Tenth Circuit has not decided that physical illness warrants equitable tolling.  (Answer at 12.)

To the extent Mr. Harris argues that it is reasonable he believed he had one year plus ninety days, or until July 24, 1997, to file a federal habeas action in this Court, ignorance of the law is not a basis for equitable tolling, and the argument is foreclosed by *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).

As for Mr. Harris's actual innocence claim, the "one-year statute of limitations under § 2244(d) is subject to equitable tolling but only in rare and exceptional circumstances." *Gibson v. Klinger,* 232 F.3d 799, 808 (10th Cir.2000) (quotation and citation omitted).  Equitable tolling may be allowed if the petitioner shows actual innocence.  *Miller,* 141 F.3d at 978.  Mr. Harris states that he had an alibi, but his trial attorney did not interview the alibi witness before trial or enter a notice of alibi defense. This is an insufficient showing of actual innocence, because it merely would be

6

corroborating evidence, and it is entirely speculative. *See Stafford v. Saffle,* 34 F.3d

1557, 1561-62 (10th Cir. 1994) (holding corroborative or speculative evidence

insufficient to meet high threshold for actual innocence in evaluating whether actual

innocence claim warranted leave to amend habeas petition).

With respect to Mr. Harris's claims of illness and denial of access to his habeas

petition, I find the following based on Mr. Harris's November 15, 2007, Response (Nov.

15, 2007, Resp. Doc. # 5) at 3 to Magistrate Judge Boland's October 17, 2007, Order to

Show Cause.  Mr. Harris claims that on June 1, 2007, he became ill and was subjected

to continual monitoring until August 6, 2007, when he was transferred to an outside

hospital for treatment.  (Nov. 15, 2007, Resp. at 3.)  He further claims that he was

returned to the prison facility for two days, and sent to the Denver Health Center on

August 8, 2007, for six days, and eventually transferred to the Denver Reception and

Diagnostic Center (DRDC) on August 14, 2007.  (Nov. 15, 2007, Resp. at 3.)  Mr. Harris

also asserts he did not receive his property for three weeks after he was placed at the

DRDC.  (Nov. 15, 2007, Resp. at 3.)  Mr. Harris further asserts he was denied access

during the entire time to his habeas petition papers. (Nov. 15, 2007, Resp. at 3.)

Although Mr. Harris provides with specificity how he was denied access from his

habeas petition papers from August 6, 2007, until September 18, 2007, when he was

granted access to the library at DRDC and was able to copy and prepare his § 2254

petition for filing in this Court, Mr Harris does not state with specificity how he was

denied access to his papers from June 1, 2007, when he became ill, until August 6,

2007, when he was transferred from the prison facility to an outside hospital.  Mr. Harris

simply states that during this time he was subjected to blood tests and to a "lot of

monitoring." (Nov. 15, 2007, Resp. at 3.)  He does not assert that he was too ill to prepare his habeas petition for filing in this Court, he does not assert that he did not receive notice of the denial of his Rule 35(c) postconviction motion on June 11, 2007, and he does not assert that he requested his habeas petition and other related papers but was denied his request.  I find that Mr. Harris fails to show extraordinary circumstances necessary to support equitable tolling from June 12, 2007, the day after his Rule 35(c) postconviction motion was denied, until August 5, 2007, the day prior to when he was transferred from the prison facility to an outside hospital, a total of fifty-five days.  Accordingly, the time Mr Harris did not have a postconviction motion or collateral proceeding pending in state court is greater than one year, and the § 2254 Petition is untimely.  Nonetheless, even if I were to find the this action timely, the Amended Petition either lacks merit or is procedurally barred from federal habeas review.

B.  State-Court Exhaustion

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement. *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989). Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).

Finally, "[t]he exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995). A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

Claims are precluded from federal habeas review when the claims have been defaulted in state court on an independent and adequate state procedural ground. *Steele v. Young*, 11 F.3d 1518, 1521 (10th Cir. 1993) (citations omitted). "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision . . . . For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims." *See Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998) (internal quotations and citations omitted). Also, if it is obvious that an unexhausted claim would be procedurally barred in state court the claim is held procedurally barred from federal habeas review. *Steele*,

11 F.3d at 1524 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Harris v. Reed*, 489 U.S. 255, 269-70 (1989) (O'Connor, J., concurring)).

"Generally speaking, [the court] do[es] not address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007) (quotation and citation omitted).  Mr. Harris's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice. *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

Ineffective assistance of counsel, however, may establish cause excusing a procedural default. *Jackson v. Shanks*, 143 F.3d 1313, 1319 (10th Cir. 1998).  An applicant must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" and have "presented to the state courts [  ] an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986).  A showing of a probability of actual innocence is required to meet the fundamental miscarriage of justice exception. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

Respondents argue that Mr. Harris has failed to exhaust part of Claim Two and all of Claim Four.  With respect to Claim Two, Respondents contend that the claim in part is not exhausted because Mr. Harris failed to present his unduly suggestive lineup claim to the Colorado Supreme Court.  Respondents further contend that although Colo. App. R. 51.1 purports to eliminate for purposes of federal habeas review the requirement that a petitioner present his claims to the Colorado Supreme Court, the rule

10

is not retroactive and should not be applied in Mr. Harris's case because his conviction was final prior to May 18, 2006, the effective date of Rule 51.1, and discretionary review in the Colorado Supreme Court was available while his direct appeal was pending. (Answer at 18-21.)

Respondents primarily rely on *Wenger v. Frank*, 266 F.3d 218 (3d Cir. 2001), to support their argument that Colo. App. R. 51.1 cannot be applied retroactively to Mr. Harris's direct appeal.  In *Wenger*, the United States Court of Appeals for the Third Circuit concluded that a Pennsylvania Supreme Court rule eliminating the need to seek discretionary review in that court in order to exhaust state remedies was not retroactive. *See id.* at 226.  The Third Circuit based its conclusion on the prospective language of the Pennsylvania Supreme Court rule, a finding that the primary purpose of the Pennsylvania Supreme Court rule would not be served by retroactive application, and the Third Circuit's view that whether a particular remedy was or was not available is a question of objective historical fact that cannot be retroactively altered.  *See id.* at 225-26.

In contrast to *Wenger*, two other circuit courts have held that rules in Tennessee and Missouri, which are similar to both the Pennsylvania Supreme Court Rule at issue in *Wenger,* and Colo. App. R. 51.1, do apply retroactively.  *See Adams v. Holland*, 330 F.3d 398, 405 (6th Cir. 2003); *Randolph v. Kemna*, 276 F.3d 401, 404 (8th Cir. 2002). In *Randolph*, the Eighth Circuit reasoned that the Missouri rule was retroactive because the rule purported to clarify existing law and not change the law.  *See Randolph*, 276 F.3d at 404.  In *Adams*, the Sixth Circuit similarly concluded that the Tennessee rule was retroactive because the rule merely clarified the existing law in Tennessee.  *See*

11

*Adams*, 330 F.3d at 405.  Significantly in *Adams*, the Tennessee rule expressly provided that it was applicable "[i]n all appeals from criminal convictions or postconviction relief matters from and after July 1, 1967."  *See id.* at 401.

I find that Colo. App. R. 51.1 is most like the Tennessee rule at issue in *Adams*. Like the Tennessee rule, the plain language of Colo. App. R. 51.1 expressly provides that it applies to "all appeals from criminal convictions or postconviction relief matters from or after July 1, 1974."  Therefore, the Colo. App. R. 51.1 is merely a clarification of the existing law in Colorado and, as a result, I find that Colo. App. R. 51.1 is retroactive to Mr. Harris's direct appeal.  Mr. Harris, therefore, has exhausted Claim Two with respect to his unduly suggestive lineup claim.

As for the ineffective assistance of counsel claim raised in Claim Two, Respondents contend that Mr. Harris did not raise this claim as an ineffective assistance of counsel claim in his direct appeal but raised the claim as a violation of his right to due process, because his attendance at the suppression hearing was waived by his counsel.  (Answer at 21.)  Respondents further contend that Mr. Harris raised the issue as an ineffective assistance of counsel claim in his postconviction motion, but the court of appeals found the claim to be successive, and now the claim is barred in state court.  (Answer at 22.)

Upon review of the opening briefs in both Mr. Harris's direct appeal and the appeal of his postconviction motion, I find that he did not raise an ineffective assistance of counsel claim regarding the unduly suggestive photo lineup.  I also find that the court of appeals did not address the lineup claim based on a claim of ineffective assistance of counsel.  (Am. Answer (Doc. # 32) Exs. 1 and 7.)

Claims are precluded from federal habeas review when the claims have been defaulted in state court on an independent and adequate state procedural ground. *Steele*, 11 F.3d at 1521 (citations omitted).  "A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision . . . .  For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims."  *See Hickman*, 160 F.3d at 1271 (internal quotations and citations omitted).  Also, if it is obvious that an unexhausted claim would be procedurally barred in state court the claim is held procedurally barred from federal habeas review.  *Steele*, 11 F.3d at 1524 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Harris v. Reed*, 489 U.S. 255, 269-70 (1989)).

The time limitation established by Colo. Rev. Stat. § 16-5-402 is a firmly established and regularly followed procedural rule.  *See Klein v. Neal*, 45 F.3d 1395, 1398 (10th Cir. 1995).  Section 16-5-402 provides that a defendant who has been convicted of any felony, other than a class one felony, must commence a collateral attack of the conviction within three years of the date of the conviction.

Mr. Harris now has defaulted the ineffective assistance of counsel claim under § 16-5-402.  Because Mr. Harris has failed to demonstrate either cause and prejudice or a fundamental miscarriage of justice for the basis of defaulting his claims, he is procedurally barred from raising his ineffective assistance of counsel claim in Claim Two in this Court.  However, even if Mr. Harris did raise an ineffective assistance of counsel claim regarding the unduly suggestive photo lineup, the claim lacks merit, because, as found below, Mr. Harris fails to state that he was subjected to an unduly suggestive photo lineup.

With respect to Claim Four, Respondents argue that in Mr. Harris's opening brief in his postconviction motion he did not cite to federal or state law in support of his prosecutorial misconduct claim, and the Colorado Court of Appeals did not apply federal case law in resolving the issue.  (Answer at 23.)

In his opening brief, Mr. Harris asserted prosecutorial misconduct and an obstruction of justice based on tampering with an alibi witness in violation of Colo. Rev. Stat. § 18-8-707 and "C.R. P.C. 3.4."  (Answer, Ex. 7 at 19.)  Mr. Harris also asserted that the prosecution improperly induced the complaining witness to identify Mr. Harris by providing the witness with Mr. Harris's criminal record.  (Answer, Ex. 7 at 21.) Nothing in Mr. Harris's opening brief alerts the court of appeals that he was raising a federal constitutional claim regarding any alleged prosecutorial misconduct in his state trial. Furthermore, nothing in his petition for certiorari review raises a federal constitutional claim with respect to Mr. Harris's prosecutorial misconduct claims, and the claims as presented in state court are insufficient to exhaust the federal habeas claim he now presents in this case.

However, if a claim lacks merit, I may deny it without regard to the exhaustion issue.  *See Moore v. Schoeman*, 288 F.3d 1231, 1232 (10th Cir. 2002).  I will address the merits of Mr. Harris's prosecutorial misconduct claims below.

C.  Merits

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Mr. Harris seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id*. at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05. Pursuant to *House,*

A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 [   ] (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08 [   ]. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

16

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.  Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct, and Mr. Harris bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' "  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated."  *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* at 1178.  "This 'independent review' should be distinguished from a full de novo review of the petitioner's claims."  *Id.* (citation omitted).

### 1.  Ineffective Assistance of Counsel/Alibi Defense

It was clearly established when Mr. Harris was convicted that a defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Mr. Harris must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687.

17

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Mr. Harris's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* Under the prejudice prong, Mr. Harris must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If Mr. Harris fails to satisfy either prong of the two-part *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See id.* at 697. Finally, ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698.

Mr. Harris asserts that trial counsel failed to investigate the alibi defense prior to the day of his robbery trial, the criminal proceeding at issue in the instant action, even though Mr. Harris repeatedly requested that trial counsel endorse an alibi defense. (Am. Pet. at 21-23.) Mr. Harris contends that the alibi witness, his wife, appeared at the court the day of his robbery trial and was told by the district attorney and the defense attorney that they were set for the kidnapping trial. (Am. Pet. at 23.) Mr. Harris further contends that his wife told his trial attorney and the district attorney that she did not know about Mr. Harris's whereabouts the day the kidnapping took place, but she could testify regarding his whereabouts the day of the robbery and was told by Mr. Harris's trial attorney and the district attorney that her testimony was not needed. (Am. Pet. at 23.) Mr. Harris further contends that the alibi witness would have testified at his robbery trial that on the date and time of the robbery, he was at home, 17.71 miles away from where the robbery took place. (Am. Pet. at 22.)

18

Mr. Harris also asserts that trial counsel conducted voir dire on the issue of an alibi defense, raising the expectation of the jurors that they would hear an alibi defense, but he did not present evidence of an alibi during trial.  (Am. Pet. at 24.)  Mr. Harris concludes that trial counsel was ineffective because he had no strategic reason for failing to investigate and interview the alibi witness prior to trial, no strategic reason not to endorse the alibi defense as required by law, and no strategic reason to address the alibi issue with the jury if he had no intention of presenting evidence on the issue.  (Am. Pet. at 24.)

Mr. Harris further asserts that the Colorado Court of Appeals, in the appeal of his Rule 35(c) postconviction motion, incorrectly found that the alibi defense witness claim was fully dealt with in his direct appeal to the court of appeals.  (Am. Pet. at 25.) Mr. Harris contends that the court of appeals only dealt with his motion for substitution of counsel and not with his ineffective assistance of counsel claim.  (Am. Pet. at 25.) Mr. Harris also asserts that the record does not support the court of appeals recitation of the facts, because the alibi witness admitted that she could not provide an alibi for Mr. Harris's kidnapping case but could for his robbery case, and an affidavit given by the alibi witness was attached as an exhibit to Mr. Harris's postconviction motion.  (Am. Pet. at 30.)  Furthermore, Mr. Harris asserts that the record also does not support the court of appeals' finding that trial counsel chose to withdraw his endorsement of defendant's wife as an alibi witness, because the record unequivocally shows that trial counsel never endorsed an alibi defense.  (Am. Pet. at 30-31.)  Mr. Harris concludes that the failure to address the issue of ineffective assistance of counsel was contrary to and involved an unreasonable application of clearly established federal, as determined by

the Supreme Court of the United States, and was based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  (Am. Pet. at 27.)

In Mr. Harris's Rule 35(c) postconviction motion, the Colorado Court of Appeals

found as follows:

> Defendant also argues that his trial counsel knew prior to
> trial of his assertions of an alibi, yet failed to investigate the
> alibi, and that this omission was evidence of ineffective
> assistance of counsel.  We disagree.

> Defendant claimed that his wife would testify that he was
> home between 11 p.m. and midnight on the night of the
> robbery.  However, in a statement to the police she said that
> she left for work on the night of the robbery at 9:30 p.m., and
> she was unable to corroborate that defendant stayed home
> after she left.  The robbery occurred at 10 p.m.  She also
> stated that defendant appeared at their residence with $400.

> The record demonstrates that this information was
> submitted to the court in a motion to substitute counsel,
> where defendant made essentially the same argument
> based upon the same facts that he makes here.  The trial
> court denied substitution.

> It appears that on the strength of defendant's allegations,
> his wife would not have provided an alibi and may have
> implicated defendant in the robbery.  Based on these facts,
> defendant fails to satisfy either prong of *Strickland* because
> he cannot overcome the presumption that counsel's decision
> not to call the wife was sound trial strategy and he did not
> allege – nor could he – that his conviction likely would not
> have occurred had the wife testified at trial.

> Here, defense counsel chose to withdraw his
> endorsement of defendant's wife as an alibi witness because
> she did not aid in his theory of defense.  Her testimony
> would have placed an unaccounted-for sum of money in
> defendant's possession, which the jury could have inferred
> to have been acquired in the robbery, and she could not
> testify as to his whereabouts at the time of the offense.  The

20

> two victims both independently positively identified defendant
> as the individual who committed the robbery.

> On the strength of this record, there was no error in the
> trial court's denial of postconviction relief without a hearing.

*State of Colo. v. Harris*, No. 05CA0643 at 7-9 (Colo. App. Feb. 15, 2007).

Contrary to Mr. Harris's arguments, an alibi defense was at issue prior to Mr. May being appointed to represent Mr. Harris. *State of Colo. v. Harris*, Jan. 25, 1993, Tr., Mot. Dismiss Hr'g, at 7 and 18. It also is clear on the record that Mr. May, the attorney who represented Mr. Harris at his trial, introduced to the prosecution the possibility of an alibi witness within a week prior to the commencement of the trial and stated on the record that he was endorsing the witness. Jan. 26, 1993, Tr. at 5-6 and Jan. 27, 1993, Tr. at 4 and 87. Furthermore, during a motion to dismiss hearing, Mr. Harris conceded that other attorneys (Mr. Harris was represented by two different attorneys who withdrew prior to Mr. May) advised him that a family witness alibi is not a persuasive alibi, because a jury may perceive the family witness as lying on the defendant's behalf. Jan. 25, 1993, Tr., Mot. Dismiss Hr'g, at 7 and 14.

The prosecution stated on the trial record that the alibi witness was not able to meet with his investigator but did meet with a detective and told the detective that she can not say whether or not Mr. Harris was home at the time of the robbery, because she left for work at 9:30 p.m., and the robbery took place at 10:00 p.m. Jan. 27, 1993, Tr. at 84. The prosecution also stated on the trial record that the alibi witness told the detective that sometime around the date of the robbery Mr. Harris had $400. Jan. 27, 1993, Tr. at 84. Finally, once the alibi witness was made available to the prosecution for a statement, Mr. May withdrew the alibi witness. Jan. 27, 1993, Tr. at 89. Mr. May

stated on the record that he was withdrawing the witness not only based on his advice to his client but at his client's request.  Jan. 27, 1993, Tr. at 89.  Mr. May further stated that he had discussed with his client the possible consequences of the alibi voir dire he conducted with the jurors.  Jan. 27, 1993, Tr. at 89.

To determine if Mr. May's performance was deficient, "the relevant inquiry is whether trial counsel's decision was an informed tactical decision that was reasonable under the circumstances of the case."  *See Brecheen v. Reynolds*, 41 F.3d 1343, 1369 (10th Cir. 1994).  Based on the trial record, Mr. May's decision to withdraw the endorsement of Mr. Harris's wife as an alibi witness was an informed tactical decision. No where on the trial record does Mr. Harris or trial counsel disagree with the prosecution's statement regarding what the alibi witness had told the detective. Mr. Harris does not argue that he asked Mr. May to rebut the prosecution's statement regarding the alibi witness, but Mr. May refused to do so.

The only evidence Mr. Harris sets forth, in support of his alibi witness claim, is a June 11, 1997, affidavit provided by his wife.  In the affidavit, Mrs. Harris states that (1) she appeared on January 19, 1993, to give testimony in support of an alibi; (2) she was asked by the prosecution if she knew of Mr. Harris's whereabouts on March 21, 1991; and (3) she stated that she thought she was being interviewed regarding the night of March 18, when the robbery of the "hamburger stand" took place, but she did not know about Mr. Harris's whereabouts on March 21, 1991.  (Am. Pet. at Ex. G.)   Mrs. Harris also states that the prosecution told her that she was not there for the hamburger-stand robbery but for the kidnapping and that her testimony was not needed.  (Am. Pet. at Ex. G.)  Although Mrs. Harris states that she realized the next day that she had been

22

misled, when visiting with Mr. Harris at the jail, the affidavit was not signed and attested to by Mrs. Harris until over four years after the trial took place.  Based on the record, the affidavit lacks credibility.

During the motion to dismiss hearing, Mr. Harris was adamant that Mr. May should withdraw because he was not willing to pursue Mr. Harris's wife as an alibi witness.  Jan. 25, 1993, Tr., Mot. Dismiss Hr'g, at 7-8.  Nonetheless, whether Mr. May failed to investigate an alibi defense founded on Mrs. Harris's testimony is a moot issue based on her statement to the detective, and Mr. May's statement that Mr. Harris supported the withdrawal of the endorsement of the alibi witness.  Furthermore, there is no basis for finding Mr. May ineffective because he introduced the alibi defense during voir dire.  At the time of voir dire an alibi defense was endorsed by Mr. May.  In accordance with the trial record, Mr. May's decision to withdraw the endorsement was based on the alibi witness's statement to the prosecution.  Mr. May addressed the consequences of the withdrawal of the endorsement on the record, and Mr. Harris supported the withdrawal.  There is no evidence that Mr. May purposely introduced an alibi defense in voir dire when he had no intention of using an alibi defense at trial.  Mr. May's decision to withdraw the endorsement rather than to go forward with Mrs. Harris's proposed alibi defense is strategic in nature and does not demonstrate counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to Mr. Harris's defense.

I find that the state court's decision regarding trial counsel's effectiveness in pursuing an alibi defense was not contrary to or an unreasonable application of any clearly established rule of federal law as determined by the U.S. Supreme Court, or a

23

decision that was based on an unreasonable determination fo the facts in light of the evidence presented in the State court proceedings.  The claim, therefore, lacks merit.

### 2.  Unduly Suggestive Photo Lineup

Mr. Harris asserts that his due process rights were violated because no one in the photo lineup, besides him, matched the witnesses' descriptions of the robber (Am. Pet. at 33.), which created the exact impermissible suggestive lineup decried by federal courts.  (Am. Pet. at 41.)  Mr. Harris contends that four of the men in the photo lineup were thin black men, only two of the men, including Mr. Harris, were heavy and the other man who was heavy did not have an Afro-style haircut but had his hair "slicked back" in a pompadour. (Am. Pet. at 42.)  Mr. Harris further asserts that the prosecution provided both witnesses copies of Mr. Harris's "rap sheet," which included a photograph of Mr. Harris.  (Am. Pet. at 33.)  Mr. Harris also asserts that the witnesses were shown a photo lineup of only six persons, which under *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994), is a factor in finding that a lineup is suggestive.  (Am. Pet. at 38.)

Mr. Harris also argues that both witnesses had a very short opportunity to witness the robber, and neither witness provided an accurate description of the robber, although he does concede the descriptions of the robber given by the two witnesses were consistent.  (Am. Pet. at 39 and 40-41.)  Mr. Harris further contends that Ms. Reynolds, one of the eyewitnesses, changed her story regarding whether or not the robber wore an earring.  Further, Ms. Reynolds identified the robber as the black man that she saw on television being arrested days after the robbery and stated that he had on the same clothes, even though her description immediately after the robbery described different clothes than what the black man was wearing in the news clip on

24

television.  (Am. Pet. at 41.)  Mr. Harris also contends that Mr. Meyers, the other

eyewitness, did not see a photo lineup until months after the robbery and could not

identify the robber from the photographs, stating that the face he identified looked

familiar but he would have to see the "whole person."  (Am. Pet. at 40.)  Finally,

Mr. Harris asserts that both witnesses failed to see any scars on the robber, even

though he has prominent scars around his left eye.  (Am. Pet. at 39-40.)

On direct appeal, the Colorado Court of Appeals decided this issue as follows:

> Defendant also contends that the trial court erred by
> failing to suppress the photo array identification of him as
> unduly suggestive.  According to defendant, his photo was
> excessively distinctive in the array because only one other
> photo shows a man with a face as full as defendant's and
> this other man's hair was combed in a different style.  We
> disagree.
>
> The state is not required to produce exact replicas of the
> defendant for a photo array.  *People v. Bolton*, 859 P.2d 311
> (Colo. App. 1993).  To warrant suppression, the photo array
> must be suggestive to the point of making the identification
> unreliable as a matter of law.  *People v. Hollis*, 43 Colo. App.
> 331, 605 P.2d 483 (1979).
>
> A photo array is not unduly suggestive "if the photos are
> matched by race, approximate age, hair type, and a number
> of other characteristics."  *People v. Kemp*, 885 P.2d 260,
> 263 (Colo. App. 1994).
>
> We agree with the trial court's determination that the
> photos used here were reasonably matched as to
> defendant's skin color, hair color and style, facial hair, age,
> and other physical characteristics and thus did not create a
> substantial possibility of misidentification.  *See People v.
> Ridenour*, 878 P.2d 23 (Colo. App. 1994).

*State of Colo. v. Harris*, No. 93CA0963 at 4 (Colo. App. June 29, 1995).

When the constitutionality of a photographic array is challenged, the Due

Process Clause mandates a two-pronged inquiry: first, it must be determined

whether the array was impermissibly suggestive, and if so, second, it must be

determined whether the identifications were nevertheless reliable in view of the totality

of the circumstances.  *See Simmons v. United States*, 390 U.S. 377, 384 (1968);

*Johnston v. Makowski*, 823 F.2d 387, 391 (10th Cir. 1987).  These two prongs must be

analyzed separately, and only if it is determined that the array was impermissibly

suggestive is it necessary to reach the second prong of the test.  *Johnston*, 823 F.2d at

391.  Finally, the constitutionality of identification procedures is a mixed question of law

and fact.  *Archuleta v. Kerby*, 864 F.2d 709, 710 (10th Cir. 1989) (citing *Sumner v.

Mata*, 455 U.S. 591, 597 (1982)).

In *Simmons*, the Supreme Court held that "convictions based on eyewitness

identification at trial following a pretrial identification by photograph will be set aside on

that ground only if the photographic identification procedure was so impermissibly

suggestive as to give rise to a very substantial likelihood of irreparable

misidentification."  *Simmons*, 390 U.S. at 384.  To determine whether a pretrial

identification was impermissibly suggestive, "courts use a number of factors . . . ,

including the size of the array, the manner of its presentation by the officers, and the

details of the photographs themselves."  *United States v. Sanchez*, 24 F.3d 1259, 1262

(10th Cir. 1994) (citation omitted).

In order to prevail on a claim of an unduly suggestive photographic lineup, a

defendant has the initial burden of proving that the identification procedure was

impermissibly suggestive.  *See United States v. Wade*, 388 U.S. 218, 240 n. 31 (1967).

26

It is only after the defendant meets this burden that the burden shifts to the government

to prove that the identification was reliable independent of the suggestive procedure.  *Id.*

Absent a finding of a substantial likelihood of irreparable misidentification, the  evidence

set forth regarding the lineup is for the jury to weigh.  *Manson v. Brathwaite*, 432 U.S.

98, 116, (1977).  "Evidence with some element of untrustworthiness is customary grist

for the jury mill."  *Id.*

The factors to consider for whether identification testimony is admissible include

"the opportunity of the witness to view the criminal at the time of the crime, the witness'

degree of attention, the accuracy of his prior description of the criminal, the level of

certainty demonstrated at the confrontation, and the time between the crime and the

confrontation."  *Id.* at 114.  These factors are weighed against the corrupting effect of

the suggestive identification.  *Id.*

Regarding whether the photo array was impermissibly suggestive the trial court

found as follows:

> Let's take witness Angela Reynolds first.  The Court's had
> the opportunity to review the photo array as well as the
> current testimony of Angela Reynolds and the detective who
> showed her the photo array of Angela [sic] Reynolds [sic].
> Based upon the testimony of both of those witnesses and
> the totality of the circumstances surrounding the
> identification of the Defendant, as a result of her being
> shown the photo array, the Court finds that the photo array
> was not impermissibly suggestive, was not constitutionally
> defective in that manner, and, therefore, any identification
> which Ms. Reynolds might make at trial would not be
> unconstitutional or impermissible based upon an
> impermissible photographic array.
>
> With respect to Robert Myers, the Court makes the same
> findings with respect to the suggestion that the lineup was

> suggestive, finding specifically that the lineup was not
> impermissibly suggestive.

Jan. 26, 1993, Tr. at 64.

Mr. Harris filed a motion to suppress the two witnesses' identification of him

based on an impermissive suggestive photo lineup.  At the motion to suppress hearing,

one of the witnesses, Ms. Reynolds, testified that when she was presented with a photo

lineup by a detective she read a statement that instructed her that the pictures may or

may not include the robber and that if she could she was to identify the person who had

committed the robbery.  Jan. 26, 1993, Tr., Mot. Hr'g, at 18.  She further testified that

immediately when she looked at the photographs she identified the person who had

committed the robbery and that the detective did not indicate to her who the person was

that she had identified.  Jan. 26, 1993, Tr., Mot. Hr'g, at 19.

Mr. Meyers testified that the photo array contained six different photos, that he

was instructed that the photographs may or may not include a photograph of the person

accused of the crime, and that he was directed to point out one of the individuals if he

recognized him.  Jan. 26, 1993, Tr., Mot. Hr'g, at 34.  Mr. Meyers further testified that

the investigator who provided the pictures to him did not indicate anything about whom

he should or should not pick and that he wrote a statement when he identified the photo

of Mr. Harris that it looked like the man that committed the robbery, but he would have

to see the "whole person."  Jan. 26, 1993, Tr., Mot. Hr'g, at 35-36.  I find that the photo

arrays were not suggestively presented to either of the witnesses.

Although it is not clear from the transcript of the motion to suppress hearing how

many photos were included in the photo array given to Ms. Reynolds, the detective who

28

presented the photo array to Ms. Reynolds testified at trial that the array included

photographs of six different male parties.  Jan. 27, 1993, Tr. at 101.  "[C]ourts have held

that a photo array with as few as six pictures is not *per se* unconstitutional." *Sanchez*,

24 F.3d at 1262 (collecting cases).  The Tenth Circuit noted in *Sanchez*,

> [T]he number of photographs in an array is not itself a
> substantive factor, but instead is a factor that merely affects
> the *weight* given to other alleged problems or irregularities in
> an array. The larger the number of pictures used in an array,
> the less likely it is that a minor difference, such as
> background color or texture, will have a prejudicial effect on
> selection.

*Id.* (emphasis in original).

The issue, therefore, is whether Mr. Harris's photograph was so different from the

photographs of the other five individuals that the photo lineup should be considered

unduly suggestive.  The only questionable particulars raised by Mr. Harris about the

photo array was that only two of the six individuals appeared to be heavyset and only

one of the heavyset individuals had a short Afro-style haircut matching Mr. Harris.

Nonetheless, the Colorado Court of Appeals found that the skin color, hair color and

style, facial hair, age, and other physical characteristics of each of the individuals were

reasonably matched and did not create a substantial possibility of misidentification.

Mr. Harris does not challenge the age, facial hair, skin color, or hair color of the

individuals in the photo array.  At the motion to suppress hearing, counsel for Mr. Harris

questioned Ms. Reynolds regarding the photo array, and she agreed that only two of the

individuals in the photo array could be considered heavy.  Jan. 26, 1993, Tr., Mot. Hr'g,

at 21.  Nonetheless, even if I were to find that the photo lineup was impermissibly

suggestive, given the totality of the circumstances, identification was reliable

29

independent of the suggestive procedure.  The opportunity both witnesses had to view the criminal at the time of the crime; the witnesses' degree of attention; the accuracy of their description of the criminal immediately after the robbery; the level of certainty demonstrated at the confrontation, especially by Ms. Reynolds; and the time between the crime and the confrontation, again especially with respect to Ms. Reynolds, weigh against any corrupting effect of a suggestive identification and allow the identification testimony by both witnesses to be admissible.

Ms. Reynolds testified that she was within one foot of the robber at one point, that she had a clear view of the robber's face, that the lighting was good, and that the robber did not hide any part of his body.  Jan. 27, 1993, Tr. at 111-123.  Ms. Reynolds further testified that she was able to provide a detailed description of the robber right after the robbery, including the type of clothing he wore, and that she immediately identified Mr. Harris in the photo array as the individual who committed the robbery within three days after the robbery took place.  Jan. 27, 1993, Tr. at 127-129. Ms. Reynolds also identified Mr. Harris in court as the person who committed the robbery.  Jan. 27, 1993, Tr. at 113.

Mr. Meyers also testified that the lighting was good during the time of the robbery, that the robber did not make any attempt to cover his face, that at one point the robber was about an arm's length away from him, that he had full view of the robber's face, and that he provided a description of the robber at the time of the robbery.  Jan. 27, 1993, Tr. at  21-22, 25, 28, and 29.  Mr. Meyers further, after seeing Mr. Harris in court, testified that he was sure Mr. Harris was the robber.  Jan. 27, 1993, Tr. at 31. The issues presented by Mr. Harris regarding the witnesses' failure to note the scar on

30

his face, the conflicting statements regarding whether or not the robber wore an earring,

and the possible conflicting statement by Ms. Reynolds that the robber and the man in

the television news clip are no more than pieces of evidence that have some element of

untrustworthiness and are for the jury to weigh.  *Manson*, 432 U.S. at 116.

Based on the above testimonies, the identifications given by both Ms. Reynolds

and Mr. Meyers were independently reliable.  I find that the trial court's findings

regarding the photo array lineup are presumed to be correct because Mr. Harris fails to

meet the burden of rebutting the presumption by clear and convincing evidence. I also

find that the state court's decision regarding the suggestiveness of the photo lineups

was not contrary to or an unreasonable application of any clearly established rule of

federal law as determined by the U.S. Supreme Court or a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceedings.  The claim, therefore, lacks merit.

### 3.  Denial of Substitute Counsel

"The Sixth Amendment provides no right to counsel blindly following a

defendant's instructions."  *U.S. v. Padilla*, 819 F.2d 952, 956 (10th Cir. 1987) (citing

*McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir.), *cert. denied,* 474 U.S. 852

(1985)).  Furthermore, there is no absolute right to counsel of one's choice.  *United*

*States v. Peister,* 631 F.2d 658, 661 (10th Cir. 1980), *cert. denied,* 449 U.S. 1126

(1981).  Nonetheless, "[e]ven when a [   ] court suspects manipulation on the part of a

criminal defendant who seeks substitution of counsel, it must balance the need for

efficient administration of the criminal justice system against the defendant's right to

counsel." *Padilla*, 819 F.2d at 956 (citing *United States v. Gipson*, 693 F.2d 109, 112 (10th Cir. 1982), *cert. denied*, 459 U.S. 1216 (1983)).

Mr. Harris asserts that his trial counsel refused to investigate or endorse the alibi defense and refused to challenge the photo lineup and identifications made by the witnesses.  (Am. Pet. at 51-53.)  Mr. Harris contends that, even though the record was clear that a complete breakdown in communication occurred between Mr. Harris and trial counsel, the trial court failed to comply with its duty to appoint substitute counsel. (Am. Pet. at 54.)

On direct appeal, the Colorado Court of Appeals decided this issue as follows:

> Secondly, defendant argues that the trial court erred in determining that he had not established good cause to dismiss court-appointed counsel.  Again, we disagree.
>
> Defendant contends that counsel was deficient in failing to secure sufficient law library time for defendant at the jail, failing to arrange a lie detector test, failing to present alibi witnesses, and failing to obtain a television news film of defendant's arrest on an unrelated criminal charge.
>
> The right to counsel does not include the right to any particular attorney.  *People v. Arguello, supra*.  Court appointed counsel has broad authority as to the conduct of the trial.  *See McClendon v. People*, 174 Colo. 7, 481 P.2d 715 (1971); *People v. Anderson*, 649 P.2d 720 (Colo. App. 1982).  To justify dismissal of counsel, the defendant must overcome the presumption that counsel's actions might be considered sound trial strategy under the circumstances. *People v. Oliver*, 745 P.2d 222 (Colo. 1987).
>
> After inquiring as to defendant's reasons for wishing to dismiss court-appointed counsel, the trial court here found that defendant suffered no prejudice through counsel's alleged shortcomings.  It concluded that none of the concerns presented constituted a basis for a change of counsel and that defendant's motion was grossly untimely as it was submitted just prior to the commencement of trial.

These conclusions are supported by the record and will not be disturbed here. *See People v. Haynie*, *supra*; *People v. Barnes*, 636 P.2d 1323 (Colo. App. 1981).

As to the failure to obtain the television news film, according to the record, defendant did not raise this as a reason for requesting dismissal of counsel prior to this appeal; therefore, we decline to address it. *See People v. Mershon*, 874 P.2d 1025 (Colo. 1994); *People v. Aponte*, 867 P.2d 183 (Colo. App. 1993).

*Harris*, No. 93CA0963 at 9-10.

To the extent that Mr. Harris argues the trial court violated his constitutional rights when it denied his motion to dismiss trial counsel, the claim will be denied for the reasons set forth above. First, I found above that trial counsel was not ineffective in failing to investigate or present an alibi defense based on the proposed testimony of Mr. Harris's wife. Mr. Harris even agreed in the motion to dismiss hearing that an alibi given by a family member tends to be viewed by the jury as a lie asserted on behalf of the defendant. Jan. 25, 1993, Tr., Mot. Dismiss Hr'g, at 7. Second, I also found above that even if the photo identification was impermissibly suggestive, given the totality of the circumstances, the witnesses' identification was reliable independent of any suggestive procedure.

Nonetheless, during the motion to dismiss hearing Mr. Harris did not raise the trial counsel's unwillingness to challenge the photo lineup as impermissibly suggestive and argue such unwillingness as a basis for finding a deterioration of the attorney/client relationship, and the need for substitution of counsel. Jan. 25, 1993, Tr., Mot. Dismiss Hr'g. Furthermore, in Mr. Harris's opening brief in his direct appeal he mentions the

failure to investigate the misidentification claim only in passing.  (Am. Answer, Ex. 2 at 8.)

Even if I consider all of the reasons raised by Mr. Harris in support of his motion to dismiss counsel, including the claims that his attorney failed to (1) set forth an alibi defense; (2) arrange for Mr. Harris to take a lie detector test; (3) secure a copy of a television film footage of Mr. Harris, from which Ms. Reynolds had identified Mr. Harris as the robber; and (4) properly address a defense in Mr. Harris's other sexual assault cases, the trial court was justified in finding a lack of good cause for dismissing trial counsel.

The trial court found the alibi defense to be nonpersuasive to a jury, the results of a lie detector test to be inadmissible, and any reference to other sexual assault cases involving Mr. Harris to be dealt with on cross-examination.  Jan. 25, 1993, Tr., Mot. Dismiss Hr'g, at 17-19.   As for the film footage, trial counsel testified that he was still attempting to secure the film footage, and the trial court found there was sufficient time to acquire the footage before the footage may be needed at trial.  *Id.* at 21.   The trial court also found that Mr. Harris's motion to dismiss counsel on the eve of his trial was grossly untimely and interposed for delay.  *Id.* at 19.

I, therefore, find that the trial court's findings regarding the dismissal of trial counsel are presumed to be correct because Mr. Harris fails to meet the burden of rebutting the presumption by clear and convincing evidence.  The state court's decision was not contrary to or an unreasonable application of any clearly established rule of federal law as determined by the U.S. Supreme Court or a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  The claim, therefore, lacks merit.

### 4.  Prosecutorial Misconduct/Denial of Due Process

Prosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974); *see also Mahorney v. Wallman,* 917 F.2d 469, 472 (10th Cir. 1990).  "[N]ot every trial error or infirmity . . . constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.' " *Donnelly,* 416 U.S. at 642 (quoting *Lisenba v. State of California,* 314 U.S. 219 (1941)).  Allegations of prosecutorial misconduct are mixed questions of fact and law.  *Duckett v. Mullin,* 306 F.3d 982, 988 (10th Cir. 2002) (citing *Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir. 1994)).  Based on the following, Mr. Harris fails to demonstrate that the prosecution's actions rise to the level of a due process violation.

Mr. Harris asserts that the prosecutor violated his right to due process and his right to a fair trial when he gave the witnesses copies of his criminal record prior to their testimony.  (Am. Pet. at 56.)  Mr. Harris further asserts that the prosecutor violated his right to due process and a fair trial when he prevented an essential witness form testifying.  (Am. Pet. at 57.)

In the denial of Mr. Harris's Rule 35(c) on appeal, the Colorado Court of Appeals found as follows:

> Defendant further argues that the trial court erred by denying without a hearing his claims of prosecutorial misconduct and obstruction of justice.  We disagree.

35

Defendant argues that the prosecutor prevented his alibi witness from testifying by telling her she was not needed and instructing her to go home.

However, defendant's counsel stated to the court on the record that he was withdrawing his endorsement of defendant's wife.  Therefore, even if defendant's allegation were true, he was not prejudiced by the absence of the witness, as his counsel had no intention of eliciting her testimony.

Defendant additionally argues that the prosecution improperly induced the complaining witness to identify him by supplying her with copies of his criminal record.  The only evidence he offers in support is his own assertion that the complaining witness was unsure of his identification.  He points to no statements or evidence in the record.

The record contradicts this assertion.  The complaining witness independently identified defendant before viewing the file, both when she contacted police and reported that the person who robbed her was the same man she had seen on the television, and when she identified defendant in a photo line-up.  She stated on the record that she did not recall seeing any pictures of defendant in the file.

This information was contained in the record at the time of defendant's motion for postconviction relief. Therefore, the trial court's denial of defendant's motion without a hearing on these grounds was not in error.

*Harris*, No. 05CA0643 at 9-11.

I find that even if the prosecutor did tell the alibi witness that she was not needed and instructed her to go home, trial counsel, with Mr. Harris's concurrence, withdrew the endorsement of an alibi witness.  As I found above, in Section "1.  Ineffective Assistance of Counsel/Alibi Defense," trial counsel stated on the record that he was withdrawing the witness not only based on his advice to his client but at his client's request.  When trial counsel stated on the record that he was withdrawing the witness in part based on his

client's request, Mr. Harris did not disagree with his counsel's statement.  Nothing, therefore, in the prosecutor's statement to the alibi witness infected the trial with such unfairness as to make the resulting conviction a denial of due process.

As for the issue of providing to the witnesses copies of Mr. Harris's criminal records prior to their testimony, Mr. Harris again fails to assert how the viewing of the criminal records infected the trial with unfairness such that the resulting conviction denied him due process.  In Mr. Harris's opening brief on appeal, in his postconviction motion, he refers to the April 17, 1991, transcript of his preliminary hearing as proof that witnesses reviewed Mr. Harris's criminal record.  (Am. Answer, Ex. 7 at 21.) Ms. Reynolds gave a description of the robber matching Mr. Harris at the time of the robbery.  She also identified Mr. Harris from television footage of his arrest for another criminal action and in a photo lineup prior to the April 17, 1991, preliminary hearing. Although Mr. Meyers did not identify Mr. Harris in a photo lineup until June 1991, he also gave a description matching Mr. Harris at the time of the robbery and testified at the motion to suppress hearing that he did not recall seeing any photographs of Mr. Harris in his criminal records at the preliminary hearing nor was he shown any pictures during the hearing.  Jan. 26, 1993, Tr., Mot. Suppress Hr'g, at 39 and 42. Mr. Harris provides no evidence that the criminal records Mr. Meyers and Ms. Reynolds viewed at the preliminary hearing contained any pictures of Mr. Harris or that the viewing of the criminal record affected the witnesses' ability to identify him as the robber.

Nothing the prosecution did so infected the trial with unfairness that Mr. Harris's conviction resulted in a denial of due process warranting reversal.  I, therefore, find that

the state court's decision regarding Mr. Harris's prosecutorial misconduct claim was not

contrary to or an unreasonable application of any clearly established rule of federal law

as determined by the U.S. Supreme Court or a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceedings.  The claim, therefore, lacks merit.

### 5.  Right to Notice of Habitual Offender Charges

Mr. Harris asserts that the State must prove charges set forth in the information

pursuant to *Jackson v. Virginia*, 443 U.S. 307, 314 (1979).  (Am. Pet. at 60.)  Mr. Harris

further asserts that the United States Constitution prohibits trying a defendant on

charges not made in the indictment or information pursuant to *Stirone v. United States*,

361 U.S. 212, 217 (1960); *Hunter v. New Mexico*, 916 F.2d 595, 598 (10th Cir. 1990),

*cert. denied,* 500 U.S. 909 (1991); *Casadas v. People*, 134 Colo. 244, ___, 304 P.2d

626, 628 (1956); United States Constitution amendments V, VI, & XIV.  (Am. Pet. at 60.)

Mr. Harris also asserts that in any habitual criminal action the prosecution bears the

burden of proving beyond a reasonable doubt that (1) the defendant has been

previously convicted of a specific crime, on a specific date, and at a specific location; (2)

the crime was a felony or would be a felony if committed in Colorado; and (3) the charge

which led to the conviction was separately brought and tried and arose out of a criminal

episode separate and distinct from any of the incidents alleged in the other habitual

criminal counts.  (Am. Pet. at 62.)

Mr. Harris further contends that counts five, seven, eight, and nine violated his

constitutional right to notice, because the evidence relied on by the prosecution failed to

prove the alleged date of conviction.  (Am. Pet. at 63-75.)  In particular, Mr. Harris

challenges the dates the judgments of conviction were signed by the judges in counts

five and seven.  (Am. Pet. at 63-75.)  He also challenges the lack of court documents

that identify a judgment of conviction and the lack of signatures by the sentencing

judges in counts eight and nine.  (Am. Pet. at 63-75.)

In Mr. Harris's direct appeal, the Colorado Court of Appeals found as follows:

V.

Defendant argues that there was insufficient evidence to
support the guilty verdicts on the habitual offender counts.
We do not agree.

A.

Defendant first argues that, as to several of the habitual
offender counts, the prosecution failed to meet its burden of
proof because the records of the judgments of conviction
were not self-authenticating.

Our review of the documents submitted reveals that all of
the disputed documents were accompanied by a certificate
attesting that they are true and accurate copies taken from
the public records over which the custodian has authority.
Thus, the trial court did not err in finding them duly
authenticated for purposes of the habitual offender charges.
*See* § 16-13-103, C.R.S. (1986 Repl. Vol. 8A); CRE 902.

Contrary to defendant's assertion, there is simply no
additional requirement that a public official attest to the
genuineness of the judge's signature on the judgment of
conviction.  *See People v. Johnson*, 699 P.2d 5 (Colo. App.
1984).

B.

Defendant next argues that, as to each of several of the
habitual offender counts, the mittimus submitted does not
reflect the date of the conviction as it was alleged in the
information.  We disagree.

A conviction for purposes of the habitual offender statutes
is effective as of the date the judgment of conviction is
entered by the trial court. *People v. Jacquez*, 196 Colo. 569,

588 P.2d 871 (1979).  A judgment of conviction consists of the recital of the plea, or the verdict or findings, the sentence, the amount of presentence confinement, and costs, if any, assessed against the defendant.  *See* Crim. P. 32.  A judgment enters when it is entered in the criminal docket.  *See C.A.R.* 4(b)(1).

Here, each mittimus, or other document submitted, shows that the judgment of conviction was entered on the same date as alleged in the information.  Consequently, defendant was fully apprised by the information as to the elements of the habitual criminal counts so that he could adequately defend against the charges.  The date alleged in the information as the date of judgment of conviction is clearly and prominently indicated on each document.  Hence, defendant may not obtain relief from the habitual offender charges on this basis.  *See People v. Ortega*, __ P.2d __ (Colo. App. No. 92CA1679), November 3, 1994; § 16-13-101(2), C.R.S. (1986 Repl. Col 8A).

Relying upon *People v. Ganatta*, 638 P.2d 268 (Colo. 1981), defendant argues that an order does not become a final judgment pursuant to Crim. P. 32(c) until the trial court has signed the minute order.  However, *Ganatta* does not address the operative date for habitual offender charges. Moreover, Crim. P. 32(c) has been amended to eliminate, for purposes of finality, the requirement of the judge's signature. Thus, that the judge did not sign the documents until several days after entry of judgment of conviction is immaterial.

C.

Defendant next contends that another of the habitual offender counts must be reversed because the supporting documents are not court documents reflecting a conviction in Ohio but instead are unrelated documents taken, he surmises, from the files of the prosecuting attorney.  Again, we disagree.

Looking at the journal entry as a whole, we are convinced it is a court record of an Ohio felony conviction and, therefore, is competent proof for habitual offender purposes.

D.

      Finally, defendant argues that one of the habitual offender counts must be reversed because the record of the Ohio conviction submitted in support thereof was not signed by the judge.  In making his argument, however, defendant ignores the signed copy of the document in support of that charge which was submitted under a different exhibit number.

*Harris*, No. 93CA0963 at 11-13.

      I have reviewed counts five, seven, eight and nine as entered in the information in Mr. Harris's state criminal case.  Each count identifies a specific crime of which Mr. Harris had been previously convicted on a specific date and at a specific location.  The crimes in each count were either identified as a felony or found to be a felony if committed in Colorado, and the charges which led to the conviction were separately brought and tried and arose out of a criminal episode separate and distinct from any of the incidents alleged in the other habitual criminal counts.

      Contrary to Mr. Harris's arguments, pursuant to Crim. P. 32(c) a judge's signature is not required for the purposes of finality in a criminal proceeding.  Furthermore, the Colorado Court of Appeals found that the mittimus in each count showed the judgment of conviction was entered on the same date as alleged in the information, and Mr. Harris was fully apprised of the elements of the habitual criminal counts so that he could adequately defend against the charges.

      At his sentencing, Mr. Harris conceded that he was convicted in the State of Ohio of armed robbery and assault with intent to rob.  Apr. 22, 1993, Tr., Sentencing Hr'g at 11.  Moreover, Mr. Harris does not assert that he was not a defendant in each of the crimes listed in counts five, seven, eight, and nine.  His claims only address the

41

authenticity of the documents relied on by the prosecution to support each of the prior conviction counts.  The court of appeals thoroughly addressed Mr. Harris's authenticity claims regarding each count and determined the sufficient evidence existed to support each of the counts.  I, therefore, find that the state court's decision regarding Mr. Harris's habitual offender charges was not contrary to or an unreasonable application of any clearly established rule of federal law as determined by the U.S. Supreme Court or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  The claim, therefore, lacks merit.

### III.  Conclusion

Based on the above findings, the Court will deny the Application and dismiss the action on the merits.  Accordingly, it is

ORDERED that the Application is denied and the action is **DISMISSED** on the merits.  It is

FURTHER ORDERED that the Clerk of the Court is directed to return to the Denver County District Court the state court records, including twenty-two volumes and one envelope.

Dated:  December 1, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge